## PILGER VS. BUTTERMAN.

**Proof that the owner had intended to execute a will giving a lot to his son, and that after the owner's death, the heirs verbally agreed to let the son have it, is insufficient to take the case out of the statute of frauds and perjuries.**

Error to the Common Pleas of Lackawanna County. No. 93, January Term, 1884.

This was an action of ejectment brought by John Butterman and others against Charles Pilger and Frederick William Pilger. Peter Butterman, the father of the plaintiffs below, and of Nicholas Butterman, owned in his lifetime and died seized of the whole of the lot of land, the undivided 5-6 of which the plaintiffs claim, as the heirs of Peter Butterman, deceased. All the interest and estate of Nicholas Butterman was sold by the Sheriff, at which sale the defendant below became the purchaser, and entered upon and held possession of the whole lot of land, and claimed that Nicholas Butterman had purchased from these plaintiffs their estate or interest in the lot of land. It was claimed on behalf of Pilger that Peter Butterman had made a will giving the property to Nicholas Butterman, on condition of his making certain payments to the other heirs, but that this will was never executed and that after the father the heirs met together and agreed to

carry out what he intended to do by will, and that Nicholas Butterman gave his notes for the money and afterwards paid them; that Nicholas Butterman took possession and claimed the property for ten years, and when it was levied upon and sold by the Sheriff and bought by Pilger, who had previously inquired of the other parties and asked them whether they had any interest in the property, and that they thereupon answered that they had not, that they had sold it to Nicholas Butterman.

The charge of the Court was as follows:

On the part of the plaintiffs they have shown that Peter Butterman owned this land up to the time of his death, that he lived upon it. At the time of his death he had six children, five of whom have joined in bringing this suit. By his death they became his heirs and were entitled to this land Each one of them would own one-sixth part undivided of the tract. The share of Nicholas was levied upon and sold at Sheriff's sale and bought by one of these defendants, Charles Pilger. As to that share there can, therefore, be no recovery on the part of the plaintiffs, Pilger will still hold that share.

This made a good title to these plaintiffs, therefore they rested upon this title, a title by inheritance, a perfect title, so far as that is concerned.

It was claimed by the defendant that at the time he purchased Nicholas' interest, or prior to that, that he had some conversation with one of the heirs, John Butterman, as to whether he had any interest in this land. (You will recollect the testimony upon that subject.) That he said he did not have any. The testimony of Pilger himself, who is the party interested here, is not as strong as the testimony of Croft. His testimony was that he met John Butterman, and he said: "Nicholas' property gets sold, have you got any interest in it?" He said, "No." Now that might refer to the whole piece of land or it might only refer to Nicholas' interest in the property, which was really what was sold. So there would be some doubt in regard to that, and under the law, even under the doctrine of estoppel the evidence should be clear and distinct, and we therefore say upon that point there

is not evidence enough to submit that question to you, if you believe the testimony of Charles Pilger. Croft goes a little further and says that John Butterman said he didn't have any interest. John Butterman denies this. We can perhaps get at the merits of this case in as good a way as any by answering the points of the defendant. You will bear in mind that the plaintiff having shown good title is entitled to recover unless the defendants show that that title is defective.

The defendants have asked us to charge you as follows:

I. "If the jury believe that Mathias Butterman was made plaintiff in this action without his authority or consent, the verdict should be in favor of the defendants for his interest."

Answer of the Court: We decline so to charge you because this suit was brought some time ago in the name of Mathias Butterman, and it was not until after the jury were sworn that the attention of the counsel was brought to the fact that they would be required to file their power of attorney, and we say, that is too late, and therefore this point cannot be raised before the jury, and we decline so to charge.

II. "If the jury believe that the heirs of Peter Butterman agreed to carry out his desire as expressed in his unwritten will, namely, that Nicholas Butterman should take the property and pay the heirs a specified sum of money, then the whole property in equity belongs to Nicholas Butterman, and' their verdict should be in favor of the defendant."

Answer of the Court: It would, no doubt, be competent for the heirs of Peter Butterman to make any arrangement among themselves they pleased with Nicholas Butterman and sell him their interest in the property, and if they did it, then he would be the owner of the property, and a sale of his interest by the Sheriff would carry ths whole property, but we say to you, under the evidence in this case, there is no evidence that the heirs agreed to make such an arrangement. The married women could not do it by parol. It is only set up indirectly that it was done by parol. That evidence is called out in a collateral conversation, not connected with the transaction at all, and it is not connected with the making of the agreement. That conversation, of course, could not be binding upon the

married women, could not be binding even upon John Butterman, because there is no evidence that any such actual arrangement was made. We therefore decline to charge you as asked in the second point and answer it in the negative."

III. "If the jury find that John Butterman when asked by the defendant, had he any interest in the property in question, that he by act, word or conduct led the defendant to believe he had no interest in it and on the strength of that belief the defendant purchased the property, then John Butterman is now estopped from asserting his claim and the verdict should be in favor of the defendant for his interest."

Answer of the Court: We affirm this point and we qualify it as follows: that if subsequently to this, the time of the Sheriff's sale, the notice was given which was read to you and is attached to the writ which the Sheriff held, and that after that notice Charles Pilger went on and purchased this property, then the doctrine of estoppel would not apply. Of course, gentlemen, there is hardly any question upon that, there is no dispute about that notice, it was sworn to you, it was read there, it was attached to the writ, it is in evidence. Of course from the evidence you will be expected to find such notice was given.

Lastly, the Court is requested to withdraw the evidence of notice which is attached to the Sheriff's writ. This we decline to do ; it is part of the evidence in the case, and we refuse to do it.

Under this charge of the Court your verdict will be for five-sixths interest undivided in favor of the plaintiff, of the land described in the writ.

The verdict for the plaintiffs.

Pilger then took a writ of error, complaining of the charge of the Court and the admission and rejection of certain evidence.

C. Smith, Esq., for plaintiffs in error, argued that the question should have have been submitted to the jury.

Frank Fitzsimmons, John F. Connolly, W. G. Ward and George S. Horn. Esqs., for defendants in error, argued that the

evidence was not sufficient to take the case out of the statute of frauds and perjuries; Ackerman vs. Fisher, 57 Penna., 457; Hart vs. Carroll, 85 Penna., 508; Poorman vs. Kilgore, 26 Penna., 372; Blakslee vs. Blakslee, 22 Penna., 242.

The Supreme Court affirmed the judgment of the Court of Common Pleas on the 10th March, 1884, in the following opinion,

PER CURIAM:

A careful examination of the evidence shows that the Court committed no error. It was clearly insufficient to take the case of the statute of frauds and perjuries. There is no error shown to impeach the correctness of the judgment.

Judgment affirmed.